1  KENNETH A. KUWAYTI (CA SBN 145384)
   TERESA N. BURLISON (CA SBN 230854)
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California  94304-1018
   Telephone:    650.813.5600
4  Facsimile:    650.494.0792
   Email:        KKuwayti@mofo.com
5                TBurlison@mofo.com

6  Attorneys for Plaintiffs
   DAVID W. and JILL GALLINATTI
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  DAVID W., JILL GALLINATTI,              Case No.    CV-07-05841 (SI)

12              Plaintiffs,                 **COMPLAINT FOR VIOLATION
                                            OF THE INDIVIDUALS WITH
13        v.                                DISABILITIES EDUCATION
                                            ACT**
14  PLEASANTON UNIFIED SCHOOL DISTRICT,
                                            **[20 U.S.C. § 1400, *et seq.*]**
15              Defendant.

16

17                    **INTRODUCTION**

18        1.      This is a lawsuit brought pursuant to the Individuals with Disabilities Education

19  Act ("IDEA"), 20 U.S.C. § 1400 et seq., and under California Education Code, section 56000.

20  The IDEA and its implementing regulations provide procedural and substantive rights to ensure

21  that children with disabilities receive a free and appropriate public education.  The IDEA requires

22  that such education be provided pursuant to a written "individualized education program" or

23  "IEP," developed specifically for that child, based on an adequate and complete assessment of the

24  child's educational needs and which outlines the special education and related services and

25  supplementary aids and services to be provided to the child.  20 U.S.C. §§ 1414, 1415.  The IEP

26  must be developed by a team composed of the child's parents, a regular education teacher, and

27  special education teacher, and any other applicable service providers.  *Id.*

28

2.    In August of 2000 Defendant Pleasanton Unified School District (the "District") found Plaintiff David W. (David), a sixth grader, eligible for special education in the category of "learning disabled." His IEP program from August of 2000 until he left the Defendant District on May 15, 2005 consisted of a mainstream placement with resource specialist services. During that time period he also received counseling from school psychologists for emotional and behavioral concerns that had been noted in his original special education assessment in May of 2000. However, none of these services were provided through David's IEP. Instead they were provided as an adjunct to his regular education program.

3.    During this time period, David's mental health and behavior deteriorated until the beginning of his tenth grade year in the fall of 2004 when the deterioration in his mental health became acute. Notwithstanding the deterioration in David's condition, the District consistently advised David's mother, Jill Gallinatti. ("Jill G."), that no other services were available to him and consistently failed to provide any IEP-driven mental health services.

4.    At an IEP meeting convened on March 10, 2005, after David's condition had deteriorated to the point that he was not attending school and was even failing an independent study program, the District's IEP team, for the first time, advised Jill G. that IEP-driven intensive mental health services might be available from Alameda County Mental Health, Children's Specialized Services ("CSS"), pursuant to a state law at CA Govt. Code, Ch. 26.5, Div. 7, Title 1 (referred to hereafter as AB3632). At that IEP, Jill G. consented to a referral to CSS for the purpose of an assessment to inquire into David's eligibility for this service. However, the District failed to make a timely referral. Under applicable regulations, the District was supposed to make the referral within five days. However, by May 15, 2005, more than two months later, the District still had not done so.

5.    On that day, David committed a serious assault and battery upon his father and was immediately placed in the Alameda County Juvenile Hall, awaiting disposition by the Juvenile Court. On July 22, 2005, with the permission of that Court, Jill G., at her sole expense, placed David at a residential treatment school known as Tranquility Bay in Jamaica. David did not prosper in that school. On Nov.24, 2005, Jill removed David from that school and placed him

COMPLAINT FOR VIOLATION OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT
Case No. CV-07-05841 (SI)
pa-1196293

2

at a residential treatment school known as Willow Creek, in Utah, where he remained until January 5, 2007.

6.    In early January of 2006, Jill G. made a written request to the District requesting that they assess David for special education eligibility as emotionally disturbed and that they make a simultaneous referral for mental health services to CSS, pursuant to AB3632, for the purpose of developing an IEP placement for him. Once again the District failed to act within the required time period.  The District was supposed to make the referral to CSS within five days, but took seven months, until August 2006.  The District was supposed to convene an IEP meeting within sixty days of the January request, but no meeting was held until December 2006.  As a result, completion of the assessment process and IEP did not result in a placement until January 8, 2007 — one year after Jill G's request — when the Defendant and CSS jointly funded David's placement at Provo Canyon, a locked residential school in Provo Utah, from which he graduated in June of 2007.

7.    On March 8, 2007, David, acting through Jill G., filed a Request For Due Process Hearing with the California Office of Administrative Hearings seeking reimbursement for David's previous placements at Tranquility Bay and Willow Creek and all costs attendant thereto.

8.    The ALJ issued a Decision dated August 20, 2007, attached hereto as Exhibit A. This decision was correct in many aspects, as described below.  However, the ALJ made several factual and legal errors that require judicial review, including improper, unsupported and inadequate remedies and failure to award sufficient compensatory education.  By so erring, the ALJ has allowed the District to provide David with an inappropriate educational program that is not reasonably calculated to provide him with educational benefit, in violation of the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and related California law. Until and unless the ALJ's erroneous conclusions of law and fact are corrected and the remedies revised, John will continue to be denied his educational civil right: a free, appropriate public education in the least restrictive environment.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to 20 U.S.C. § 1415(i) and 28 U.S.C. § 1331.  Plaintiffs are "aggrieved parties" within the meaning of 20 U.S.C. § 1415(i).

10.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because Defendant resides in this Judicial District and the events or omissions giving rise to the claims that are the subject of this action occurred in this Judicial District.

**INTRADISTRICT ASSIGNMENT**

11.     Assignment to the San Francisco or Oakland Divisions of the United States District Court for the Northern District of California is appropriate pursuant to Civil Local Rule 3-2 because all of the events that are the subject of this complaint took place in the County of Alameda, State of California.

**PARTIES**

12.     Plaintiff David W. is an adult resident of Utah.   At the time of the events complained of David was a child with disabilities within the meaning of the IDEA and was domiciled with his mother in Alameda County, California.   He brings this action through his mother, Jill G., through an Assignment of Rights.

13.     Jill G. is David's mother, and is a resident of the County of Alameda, California.

14.     Defendant Pleasanton Unified School District is a local governmental agency, organized and existing under the laws of the State of California.  The District, which is the "local educational agency" as defined by the IDEA, 20 U.S.C. § 1401(19), has a duty to operate and manage the schools of the District in compliance with state and federal law.  Pursuant to the IDEA and the California Education Code, the District must provide a free, appropriate public education in the least restrictive environment to all children residing within its jurisdictional boundaries, including David.

15.    There is a present and actual controversy among the parties to this action. Plaintiffs have exhausted their available administrative remedies and have no other adequate remedy at law.

## STATUTORY SCHEME UNDER IDEA

16.    The IDEA provides that a parent or the adult student shall have an opportunity to bring an impartial due process hearing to present complaints with respect to any matter relating to the provision of a free and appropriate public education.  20 U.S.C. § 1415.  Any party aggrieved or partially aggrieved by the findings and decisions rendered at the due process hearing has a right to bring a civil action in a United States District Court.  Id.  In such an action, the Court shall receive the records of the administrative proceedings, and shall hear additional evidence at the request of a party.  Id.  Basing its decision on the preponderance of the evidence, the Court shall grant such relief as the Court determines appropriate.  Id.  Plaintiffs hereby reserve their right to request that this Court hear additional evidence supporting Plaintiffs' claim.

## STATEMENT OF FACTS

17.    David is an 18 year old adult.  At the time of the events complained of herein, he was domiciled with his mother within the boundaries of the District.  He initially was eligible for special education services pursuant to the IDEA on the basis a learning disability, and, later, on the basis of an emotional disturbance.

18.    The District assessed David for special education in May 2000 to determine eligibility as emotionally disturbed.  The District found that David had an anxiety disorder, required counseling services, had suffered a significant decrease in grades and standardized testing, had recently expressed suicidal thoughts, and was suffering from depression to the extent that he was unable to complete assignments and otherwise benefit from educational services.  A supplemental report by a District Retention Review Committee found that David had an "emotional state and lack of attendance [that] is severely affecting academics."  Despite this and other substantial evidence indicating otherwise, the District incorrectly found David not to be

1  eligible as emotionally disturbed.  However the assessor recommended academic assessment for a

2  possible learning disability.

3      19.    David was tested and, at an August 23, 2000 IEP, was found eligible for special

4  education as learning disabled to address verbal and visual processing issues.  Based upon the

5  May 2000 assessment, the District knew that David was clearly entitled to psychological services

6  as a "related service" necessary for him to benefit from his special education program.  However,

7  the District failed to provide psychological counseling services in the IEP, but instead provided

8  counseling services to David outside of his IEP during the 2000-2001, 2001-2002, 2002-2003,

9  2003-2004 and 2004-2005 school years.  A school psychologist admitted in a report dated June 6,

10  2005, that it was the policy of the District to omit psychological counseling services from IEPs

11  and to, instead, offer them outside of the IEP.

12      20.    Annual STAR testing from 2001 thru 2004 highlighted David's lack of academic

13  progress with scores in the "below basic" and "far below basic" range across the full spectrum of

14  language arts and math.  In the IEPs and assessments that followed his initial IEP on August 23,

15  2000, David's educational performance and emotional state declined dramatically without

16  appropriate District response.  The District had knowledge during the 2000-2001, 2001-2002, and

17  2002-2003 school years that David suffered from problems with anger management, coping

18  skills, and an anxiety disorder, which were impeding his educational performance.  The District

19  also knew that during the 2003-2004 school year, David began engaging in self-destructive

20  activities.

21      21.    On March 18, 2004, the District belatedly completed a triennial assessment that

22  was 10 months overdue (it should have been completed by May 2003).  This assessment did not

23  include a social-emotional assessment although the original May 2000 assessment had been

24  specifically directed to that issue.  By the 2004-2005 school year, David had significant truancies

25  and tardies, sixteen disciplinary events, and was receiving failing grades.  Throughout this time,

26  the District failed to advise David or his mother of the availability of more intensive

27  psychotherapy services provided pursuant to the IEP by the District or from CSS provided free of

28  charge through the IEP process, pursuant to AB3632.

1    22.    On January 27, 2005, the District convened an IEP meeting.  At that time, David
2    was failing; he had significant truancies and tardies; and his first semester grades showed four F's
3    and two D's.  Despite this and the volume of information indicating the need for psychological
4    counseling services or more intensive psychotherapy services, the District offered no services
5    other than the academic Resource Specialist services that he had been receiving.  David's mother
6    believed there was no more support available to David through the IEP process.  She requested
7    that David be placed in the District's Independent Study program.  The District approved this
8    change of placement, but unlawfully set forth in this IEP that no special education services would
9    be available so long as David was enrolled in Independent Study.

10    23.    In March of 2005, David's mother requested an IEP meeting, which was convened
11    on March 10, 2005.  David's mother advised the IEP team that Petitioner's behavior at home had
12    become uncontrollable, that he was getting regular private counseling, and that she was
13    considering residential placement.  For the *very first time* the IEP team informed her of the
14    existence of AB3632.  David's mother immediately requested a referral to CSS, and the IEP team
15    agreed, but failed to schedule a social-emotional assessment and to explore eligibility as
16    emotionally disturbed.  A social-emotional assessment is required by AB3632 as a condition
17    precedent to the provision of any CSS services: a residential placement is precluded by AB3632
18    unless special education eligibility as emotionally disturbed has been established by an IEP team,
19    after the social-emotional assessment.  However, Petitioner did not have this assessment because
20    the District had continually failed to provide one since 2000.

21    24.    On March 10, 2005, David's mother signed consent to an AB3632 referral to CSS.
22    CSS received the referral on May 12, 2005, far beyond the five-day regulatory timelines
23    established for the referral.  The District attached a medical report to the referral indicating that
24    David was being treated for depression and other conditions.  CSS rejected the referral on
25    May 22, 2005, for an alleged failure to document the psychological counseling that the District
26    had provided and why it was inappropriate.  The District psychologist submitted a letter dated
27    June 6, 2006, restating the information she provided in the initial referral.  On June 23, 2005, CSS
28    finally accepted the referral and issued an assessment plan.

COMPLAINT FOR VIOLATION OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT
Case No. CV-07-05841 (SI)
pa-1196293

7

25.     On May 15, 2005, David violently assaulted his father by striking him on the head with a hammer.  David was immediately placed in the Alameda County Juvenile Hall, awaiting disposition by the Juvenile Court.   While in Juvenile Hall, David became the educational responsibility of the Alameda County Office of Education ("ACOE").  ACOE did not provide any special educational services while David was in its custody.   ACOE did not even forward a request for records to the District until July 18, 2005: one day before David was released from Juvenile Hall.

26.     Between May 17 to May 23, 2005, and from May 26 to May 31, 2005, David suffered two emergency psychiatric admissions to Alta Bates Hospital.  David was diagnosed at Alta Bates with Psychosis, not otherwise specified ("NOS") and Depression, bipolar disorder, and dissociative disorder, and a differential diagnosis of paranoid schizophrenia.    Alta Bates recommended placement in a residential treatment facility.  Following his discharge, David was returned to Juvenile Hall where he remained until July 19, 2005.

27.     David's mother received the long-delayed assessment plan from CSS in late June of 2005 while David was incarcerated.  She promptly telephoned their offices and asked for help. She explained to the staff person who answered the phone that her son was in Juvenile Hall waiting disposition by the Court.  She also stated that she had hired an attorney to attempt to maintain control over David's placement by the Juvenile Court.  CSS did not instruct Petitioner's mother to sign and return the assessment plan.  Like the District, CSS provided no procedural instructions or information about how to obtain David's long overdue assessment.  Instead, the staff member advised her that CSS could take no further action while David's case was pending before the Court.  This staff member also instructed Petitioner's mother to notify him when David was returned home**.**   David's mother relied on this information and, as a result, did not immediately return the assessment consent.

28.     David's mother followed the Alta Bates recommendation and searched for an appropriate residential treatment facility. She found what she thought to be an appropriate facility at Tranquility Bay, Jamaica, and, with the Court's permission, placed him there at her own expense on or about July 22, 2005.  By the fall of 2005, it became evident to David's mother that

1   David required a more intensive placement than Tranquility Bay and she transferred him on

2   November 24, 2005, at her own expense, to Willow Creek, a locked residential treatment facility

3   in Utah.

4          29.    David's mother requested in writing on January 6, 2006, that the District conduct a

5   psycho-educational assessment to determine David's eligibility as Emotionally Disturbed, and

6   provide a referral to CSS for an AB3632 assessment to determine his need for residential

7   placement, a procedure expressly authorized by the California Government Code, Chapter 26.5,

8   §7576(d).  In this written request, David's mother informed the District that David could not be

9   returned home for assessment without placing himself and his family in jeopardy.  The District

10  did not provide an assessment plan until January 31, 2006.  David's mother signed and returned

11  the assessment plan that same day.  The assessments were not completed and an IEP- funded

12  placement made until January 8, 2007.  After the assessments, David spent a short time, from

13  June 5-8 at Teen Safe in Utah pending his transfer to his IEP placement in Provo Canyon.

14         30.    On March 8, 2007, David's mother caused a Due Process Request to be filed

15  against the District, ACOE and CSS seeking reimbursement of approximately $100,000 dollars

16  expended with regard to David's placements at Tranquility Bay and Willow Creek and the brief

17  stay at Teen Safe.  The claims included tuition, room, board, therapy, travel expenses for both

18  David and his mother, loan costs required in order to finance these costs, and incidental telephone

19  and mailing costs.  The Request was based upon the following allegations of denials of a free

20  appropriate education:

21         A.    The District's failure to determine that David was eligible for special

22              education under the designation of  "emotional disturbance" from March 8,

23              2005 thru January 16, 2007.

24         B.    The District's failure to assess David in all areas of suspected disability,

25              including social-emotional needs, from March 8, 2005 thru January 16,

26              2007.

27         C.    The District's withholding from David's mother information regarding the

28              availability of psychological counseling as a related service for David from

August 23, 2000 through January 16, 2007, which did not allow his mother to adequately participate in the decision making process.

D.    The District's failure to provide David with adequate special education services to meet his unique social-emotional needs from August 23, 2000 through May 15, 2005.

E.    The District's failure to offer and provide David with IEP-driven counseling services from August 23, 2000 through January 16, 2007.

F.    The District's failure to provide David with special education services from Jan. 27, 2005 to March 10, 2005, when David was enrolled in independent study.

G.    The District's failure to make a timely referral for AB3632 services after the March 10, 2005 IEP and failure to include the required information in the Referral submission.

H.    The District's failure to timely respond to David's mother's January 6, 2006 assessment request, and failure to convene a timely IEP meeting.

I.    The District's failure to make a timely AB3632 referral to CSS in response to David's mother's January 6, 2006 letter.

J.    CSS's failure to timely process the May 12, 2005 AB3632 referral and improper rejection of the referral.

K.    CSS's failure to respond in a timely manner to the District's second AB3632 referral in 2006.

L.    ACOE's failure to provide David with any special education services while he was in Juvenile Hall from May 15, 2005 until July 19, 2005.

31.    Prior to the due process hearing the District raised the defense of the two-year statute of limitations provided at CA Ed. Code 56505 (l), asserting that any claim based on events occurring prior to March 8, 2005 were barred by the Statute.  Plaintiffs responded by claiming the exception provided in Sec. 56505 (l) (2), which provides that the two-year limitations period does not apply if the parent was prevented from requesting a due process hearing due to the District

1    withholding information it was required to provide under special education law.  This defense

2    was based on the allegations set forth in paragraph 25 (C), above.  The ALJ determined to defer

3    ruling on this issue until the conclusion of the hearing.

4          32.    A few days prior to commencement of the due process hearing the claim against

5    ACOE was settled and ACOE was discharged as a party.  In the course of the hearing the claim

6    against CSS was settled and CSS was discharged as a party.  The ALJ specifically ruled that it

7    would be inappropriate for her to know the terms of these settlements.  The hearing was held

8    from June 19 through June 22, 2007 and June 27 to June 28, 2007.

9          33.    On August 20, 2007, The ALJ issued a written Decision ruling largely in favor of

10    Plaintiffs, finding that the District denied David a free, appropriate education ("FAPE") based

11    upon the following findings:

12          (i)    The District failed to assess David in the area of social/emotional needs

13               from March 8, 2005 until May 15, 2005.  (Legal Conclusions # 59-62);

14          (ii)    The District failed to make a timely referral to CSS for mental health

15               services after the March 10, 2005 IEP meeting.  (Legal Conclusions # 65-

16               66);

17          (iii)    The District failed to complete the District assessment requested in Jill G's

18               January 6, 2006 letter within applicable timelines, which required the

19               assessment to be completed within sixty days of receipt of the January 6,

20               2006 letter.  The District received Jill G's letter on January 10, 2006, but

21               the assessment was not completed until October 24, 2006.   (Legal

22               Conclusions # 71-73);

23          (iv)    The District failed to make a timely referral to CSS requested in Jill G's

24               January 6, 2006 letter within applicable timelines, which required the

25               referral to be made within five days of the District's receipt of the January

26               6, 2006 letter on January 10. The District did not make the referral until

27               late August of 2006. (Legal Conclusions # 69-70);

28

1        (v)       The District failed to convene any IEP meeting within the sixty-day

2        statutory timelines, Jill G's IEP request being received on January 10, 2006

3        and the IEP not being convened until December 20, 2006 and concluding

4        on January 16, 2007. (Legal Conclusions # 74-75);

5        (vi)      The District failed to offer David psychological counseling as a related

6        service from the IEP of March 10, 2005 through the IEP of May 10, 2005

7        (Legal Conclusions # 79) (The ALJ did not determine the issue of the

8        failure to offer these services prior to March 10, 2005, due to her

9        determination that the statute of limitations barred any claims related to

10        events prior to March 8, 2005).

11        34.     However, the ALJ made several erroneous rulings and provided insufficient legal

12 remedies, all of which will be detailed in the following paragraphs.

13        35.     The ALJ erroneously ruled that the exception to the two-year statute of limitations

14 provided at CA Ed. Code 56505 (l) (2), which Plaintiffs claimed to toll the statute as of August

15 23, 2000, was not applicable to the facts of this case and that, therefore, all claims based upon

16 acts or omissions occurring prior to March 8, 2005 were barred by the statute of limitations.

17 Furthermore it is submitted that the applicable statute of limitations in this case is not the two-

18 year statute set forth at CA Ed. Code 56505 (l) (2), but the three-year statute set forth at. CA Ed.

19 Code 56043 (r) which would allow claims in this case dating back to March 8, 2004 even if the

20 exception in CA. Ed. Code 56505 (l)(2) does not apply.

21        36.     At Factual Findings paragraphs # 78-80 of her Decision, the ALJ erroneously

22 determined Plaintiffs' issue as set forth in paragraph 29(A), above, by finding that there was no

23 evidence to establish David met the criteria for emotional disturbance from March 10, 2005

24 through May 15, 2005.  On the contrary, there was substantial evidence on the record and

25 significant findings set forth in the ALJ's Factual Findings, paragraphs # 8-18, to establish

26 David's eligibility for special education as emotionally disturbed during that time period.

27

28

37.    Notwithstanding the ALJ's determination of the District's denial of a FAPE to David as set forth in paragraphs 32(i), (ii) and (vi), the ALJ erroneously failed provide any remedy whatsoever therefore.

38.    In the Legal Conclusions paragraphs # 85-87 of her Decision, the ALJ erroneously concluded that Plaintiffs were not entitled to reimbursement for any of the costs attendant to his placement at Tranquility Bay from July 22, 2005 until November 24, 2005 because of: 1) Tranquility Bay's failure to provide him with an appropriate education; 2) the District was not joined in the juvenile court proceeding; 3) the District was not informed of the placement; and 4) the mother's purpose in placing him at Tranquility Bay was not to provide him with an appropriate education, but to avoid a juvenile court placement.  All four of these conclusions are erroneous.  As to reason # 1, there is ample evidence on the record that, at the time the placement was made, it was appropriate.  As to reason # 2, the ALJ found that the placement at Tranquility Bay was the unilateral act of David's mother, Jill G., and also found that David was not the educational responsibility of the District from the date of his incarceration in Juvenile Hall on May 15, 2005 until his mother's request that the District assess him on January 6, 2006. Thus there is no relevancy to the District not being joined in the juvenile court proceeding.  As to reason # 3, Plaintiffs were seeking reimbursement of these costs as compensatory education for all of the District's violations of FAPE set forth at paragraph 29 above, which is an equitable remedy which is not barred solely by the failure to give prior notice of unilateral placement, especially when the placement is made when the ALJ found that the student was no longer the educational responsibility of the District.  As to reason # 4, the evidence is clear that Jill G. placed David at Tranquility Bay because she believed that the juvenile court placements would be inappropriate, and that Tranquility Bay was appropriate.

39.    Notwithstanding the ALJ's determination of the District's denial of a FAPE to David from January 10, 2006 until the District funded his placement at Provo Canyon in January 2007 as set forth in paragraphs 32(iii), (iv) and (v), above, the ALJ erroneously found that the District was only liable for Willow Creek tuition after May 23, 2006 because Jill G. testified that until David was placed in her custody by the juvenile court on May 23, 2006 she would only have

1    agreed to a locked placement approved by the court. (In a subsequent clarifying Order, the ALJ

2    defined "tuition" as including not only the cost of schooling, but also room, board, and therapy.)

3    That testimony does not provide any legal basis for denying reimbursement for the Willow Creek

4    placement prior to May 23, 2006, inasmuch as Provo Canyon, the placement selected by the

5    District IEP team in January of 2007, was a locked placement and there is no basis for believing

6    that the juvenile court would not have approved the placement. Also, there is ample evidence on

7    the record to support the reimbursement of all of the Willow Creek tuition, room, board, and

8    therapy from November 2005 forward based on the equitable remedy of compensatory education

9    for the District's consistent denial of FAPE from the inception of his special education eligibility

10   in August of 2000 until his placement at Provo Canyon on January 8, 2007, which remedy was

11   never considered by the ALJ.

12         40.    The ALJ erroneously failed to make any findings of fact or conclusions of law or

13   in any way address Plaintiffs' request for reimbursement of expenses other than tuition, room,

14   board and therapy, thereby failing to address Plaintiffs' specific request for reimbursement of

15   travel, financing & incidental costs related to his residential placements.

16         41.    The ALJ erroneously provided in her Order that while she did not know the

17   amount or terms of the settlement between Plaintiffs and CSS, and had specifically ruled that it

18   would be inappropriate for her to know it, that the District should receive a credit for any

19   payments made under the terms of that settlement that were identified in the settlement agreement

20   as reimbursement for room, board or therapy after May 23, 2006. It was improper for the ALJ to

21   grant any credit to the District based upon evidence that was not on the record.

22         42.    The ALJ's deliberation on remedies was not sufficiently careful, impartial, and

23   sensitive to the complexities of the issues presented to warrant substantial deference. *See*

24   *Gregory K. v. Longview School District*, 811 F.2d 1307, 1311 (9th Cir. 1987). Accordingly, the

25   Court should review *de novo* the insufficient remedies granted by the ALJ, and grant the remedies

26   David has requested.

27         43.    The decision of the ALJ is final and not subject to reconsideration through further

28   administrative appeal. Plaintiffs are aggrieved by the findings of the ALJ.

COMPLAINT FOR VIOLATION OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT
Case No. CV-07-05841 (SI)                                                          14
pa-1196293

1    44.    Each of these facts is incorporated into each of the claims for relief set forth

2    below.

3

4                          **FIRST CLAIM FOR RELIEF**

5                **(Violation of the Individuals With Disabilities Education Act)**

6    45.    The District has the responsibility to provide David with a free, appropriate public

7    education, including specialized instruction and related services designed to meet his unique

8    learning needs.  Such services are to be provided without cost to David or his parents.

9    46.    The decision of the ALJ that David's remedy is limited to recovery of Willow

10   Creek tuition, room and board costs incurred after May 23, 2006, and the failure to provide for

11   reimbursement of all costs of tuition, room, board, travel, financing and incidental costs from July

12   19, 2005 until his placement at Provo Canyon in January of 2007, is erroneous, and not supported

13   by a preponderance of the evidence.

14   47.    The remedies in the form of compensatory education provided by the ALJ and set

15   forth in its Order are contrary to law and not supported by a preponderance of the evidence.

16

17                         **SECOND CLAIM FOR RELIEF**

18                         **(For attorneys' fees and costs)**

19   48.    20 U.S.C. Section 1415(i)(3)(B) provides for an award of reasonable attorneys'

20   fees and costs and related costs to the parents of a child with a disability who is the prevailing

21   party in any action or proceeding brought under 20 U.S.C. § 1415.

22   49.    Plaintiffs prevailed in substantial part in the due process proceeding described in

23   Paragraphs 16-43 above, and believe that they will prevail in this action, entitling them to an

24   award of their reasonable attorneys' fees and costs for both the administrative and judicial

25   proceedings.

26

27                          **REQUEST FOR RELIEF**

28   WHEREFORE, Plaintiffs pray for judgment as follows:

COMPLAINT FOR VIOLATION OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT
Case No. CV-07-05841 (SI)                                                          15
pa-1196293

1       1.       That this Court overturn those findings and rulings of the decision of the Office of

2   Administrative Hearings that were adverse to Plaintiffs, as identified hereinabove;

3       2.       That the Court reverse the ALJ's Order, in part and provide that the District must

4   reimburse the Plaintiffs for:

5            A.       All of the costs of room, board and tuition and therapy at Tranquility Bay

6                     in the amount of  $14,350.

7            B.       All of the costs of room, board and tuition and therapy at Willow Creek in

8                     the amount of  $59,144.

9            C.       Travel expenses related to said placements in the amount of $7759.62.

10           D.       Financing costs related to said placements in the amount of $8906 and loan

11                    interest at 6% per annum on the net loan of $41,791 from the date of the

12                    loan, December 13, 2005, until the date that the District makes payment.

13           E.       Telephone and mailing costs related to said placements in the amount of

14                    $682.65.

15           F.       Temporary placement at Teen Safe pending transfer to Provo Canyon in

16                    the amount of $800.

17      3.       That the Court award attorneys' fees and costs for both the administrative and

18         judicial proceedings;

19      4.       That the Court order such other and further relief as it may deem proper.

20  Dated: November 16, 2007         KENNETH A. KUWAYTI
                             TERESA N. BURLISON
21                           MORRISON & FOERSTER LLP

22

23                       By:   /s/ Kenneth A. Kuwayti
                             Kenneth A. Kuwayti
24

25                       Attorneys for Plaintiffs
                     DAVID W. and JILL GALLINATTI

26

27

28

COMPLAINT FOR VIOLATION OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT
Case No. CV-07-05841 (SI)
pa-1196293